IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMOTHY JOSEPH SEEBOTH,<br><br>    Petitioner,<br><br>  vs.<br><br>STEPHEN MAYBERG, et al.,<br><br>    Respondents.<br>_____/ | No. CIV S-08-0287-JAM-CMK-P<br><br><br><br>FINDINGS AND RECOMMENDATIONS |

Petitioner, a state prisoner proceeding pro se, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his continued civil commitment under California sexually violent predator ("SVP") law. Pending before the court are petitioner's petition for a writ of habeas corpus (Doc. 1), respondent's answer (Doc. 8), and petitioner's reply (Doc. 11). Also before the court is petitioner's request for judicial notice of a recent California Court of Appeal decision.[1]

/ / /

---

[1] The court may take judicial notice pursuant to Federal Rule of Evidence 201 of matters of public record. See U.S. v. 14.02 Acres of Land, 530 F.3d 883, 894 (9th Cir. 2008). Therefore, the request for judicial notice should be granted.

1

# I. BACKGROUND

A. **Facts**[2]

The state court recited the facts of petitioner's case, and petitioner has not offered any clear and convincing evidence to rebut the presumption that these facts are correct. The facts have been discussed by the California Court of Appeal in decisions issued on November 23, 1999, December 30, 2002, and March 7, 2007. These decisions described the underlying facts of petitioner's criminal convictions as follows:

> [Defendant's] prior criminal history involving deviant sexual acts with children . . .extends back to1965.  It includes 20 prior criminal charges and 9 prior convictions.  Defendant admits to having victimized 16 children.
>
> In 1965, defendant was placed in the DeWitt State hospital at the age of 20.  His mother sent him there after discovering pornographic materials and discovering defendant was having a sexual relationship with a 12-year-old boy.
>
> Also in 1967, Defendant pled guilty to a charge of lewd conduct under Penal Code section 647, subdivision (a), arising out of sexual contact with an eight-year-old girl, a nine-year-old boy, and a ten-year-old girl.  Defendant took nude photographs of the eight-year-old girl and unsuccessfully attempted to entice the ten-year-old to allow him to take her picture nude.  While wrestling with the nine-year-old boy, defendant took off the boy's clothes, threw them in the corner and took the boy's picture as he tried to get his clothes.
>
> In 1973, defendant molested four more children – three boys – ages six, four, three, and one girl – under two years old – by taking nude pictures of them, touching them and engaging in oral copulation.  He was convicted of child molestation and sentenced to prison in Arizona for two to ten years.  Defendant was paroled in 1977.
>
> In 1980, defendant attempted to sell films of child pornography to an undercover officer and was convicted of sale of obscene materials (Pen. Code, § 311.2, subd. (a)).
>
> * * *
>
> In 1983 defendant pleaded guilty to five counts of having engaged in lewd or lascivious conduct with children under the age of 14 in violation of Penal Code section 288, subdivision (1).  Four of the counts involved conduct with a seven-year-old girl, Michelle S.  In two of those

---

[2] Pursuant to 28 U.S.C. § 2254(e)(1), ". . . a determination of a factual issue made by a State court shall be presumed to be correct."  Petitioner bears the burden of rebutting this presumption by clear and convincing evidence.  See id.  These facts are, therefore, drawn from the lodged state court opinion(s).  Petitioner may also be referred to as "defendant."

> counts, defendant admitted that he engaged in substantial sexual conduct as defined in Penal Code section 1203.066. In the fifth count, the victim was a five-year-old boy, Bryan S. This count alleged that defendant masturbated the victim by rubbing lotion on his penis. This count did not include a formal allegation of substantial sexual conduct as defined by Penal Code section 1203.066. (footnote omitted).
>
> * * *
>
> After his release in 1994, defendant violated his parole in August 1995 by possessing child pornography.

**B.    Procedural History**

    1.    Civil Commitment Proceedings and Direct Appeals

In 1996, the district attorney filed a petition seeking to have petitioner civilly committed under California's Sexually Violent Predators Act ("SVPA"), California Welfare and Institutions Code § 6600, et seq. The petition proceeded to a jury trial in 1997. As to this petition, the Court of Appeal stated as follows in its December 30, 2002, decision:

> In his first SVP proceeding in September 1997, a jury found defendant was a sexually violent predator within the meaning of the SVPA. (citation omitted). The trial court ordered him committed to Atascadero State Hospital (ASH) for a period of two years. Defendant's commitment expiration date for this first commitment was September 9, 1999.
>
> * * *
>
> At trial two psychologists, Drs. Richard Morey and Carmel Muller, testified defendant met the definition of a sexually violent predator provided in section 6600, subdivision (a). [¶] Drs. Morey and Muller expressed the opinion that defendant was a pedophile. Because pedophilia is a chronic and unremitting condition, and based on defendant's criminal history and the failure of past prison terms to deter his behavior, Dr. Morey believed defendant was likely to reoffend. Dr. Muller concurred.

The first commitment term expired in September 1999.

On appeal, petitioner argued, among other things, that the evidence was insufficient to show that he committed a sexually violent offense against Bryan S. in 1983. The Court of Appeal rejected this argument and affirmed the commitment order for the 1997-1999 period in its November 23, 1999, order.

Prior to expiration of the first two-year commitment, the government filed a petition to extend the commitment through September 2001. This extension petition was supported by the declaration from one psychologist. On October 14, 1999 – after expiration of the first term in September 1999 – the trial court determined there was probable cause for petitioner's continued commitment. On March 13, 2000 – before any trial on the extension petition – petitioner moved to dismiss the extension petition based on <u>Butler v. Superior Court</u>, 78 Cal. App. 4th 1171 (6th Dist. 2000), which required that petitions to extend civil commitment under the SVPA be supported by two psychological evaluations. The day of the hearing on the motion to dismiss, the government filed an amended petition which was supported by two evaluations. The second evaluation was not prepared until after the original commitment term expired in September 1999. The trial court denied petitioner's motion to dismiss and accepted the amended petition. Following a three-day court trial, petitioner was recommitted for two years. The second commitment term expired in September 2001.

Again, petitioner appealed arguing: (1) the trial court lacked jurisdiction to proceed on the original recommitment petition because it was accompanied by a single evaluation; (2) the trial court lacked jurisdiction over the amended petition because it was filed after expiration of the initial commitment period; (3) the recommitment order violated due process because the only petition filed before expiration of the initial term was accompanied by one evaluation; and (4) the evidence was insufficient to support the findings that petitioner was likely to re-offend. The second commitment order (for the period 1999-2001) was affirmed by the Court of Appeal in its December 30, 2002, decision. In rejecting petitioner's due process argument, the court stated:

> Here, the position taken by the People that a single evaluation was required was a good faith mistake of law, not negligent or intentional wrongdoing. . . . [T]he partial defect in [a] . . . single procedural safeguard [requiring two evaluations], in light of the remaining procedures, did not violate the defendant's due process rights. Defendant was accorded the right to counsel, the right to obtain and use an expert witness, had two probable cause hearings, a full trial, and the prosecution was required to

>prove their case beyond a reasonable doubt. The People obtained a second concurring opinion as soon as the law was clarified by controlling case law. In these circumstances, the procedural error of only having a single evaluation at the start of these proceedings did not deprive defendant of due process.

In August 2001 – prior to expiration of the second term – the government filed another petition to extend petitioner's civil commitment under the SVPA for two more years to September 2003. Sometime before August 30, 2001, the trial court concluded there was probable cause for petitioner's continued detention.[3] A trial held in March 2003 resulted in a mistrial because the jury was unable to reach a unanimous verdict. In July 2003, the government filed a petition to extend petitioner's commitment through September 2005. The trial court granted the government's motion to consolidate the two petitions and the matter was set for re-trial. On August 1, 2003 – prior to expiration of the 2001-2003 term in September 2003 – the court again determined there was probable cause for continued detention pending trial. Following the re-trial, which did not occur until April 2005, the jury found that, by reason of a diagnosed mental disorder, petitioner's civil commitment should be extended through September 2005. The extension of petitioner's commitment through September 2005 was affirmed by the Court of Appeal in its March 7, 2007, decision.

According to respondents, on May 2, 2005, the government filed another petition to extend petitioner's SVP commitment through September 2007 and that, on February 16, 2006, the trial court determined there was probable cause for petitioner's continued detention pending trial on the petition. Respondents state that, as of the April 2008 when the answer was filed in this case, the matter was still pending. Respondents do not indicate whether a petition has been filed with respect to petitioner's continued commitment beyond September 2007.[4] However,

---

[3] Respondents note that the record is not clear when this determination was made but conclude that, because the court set the matter for trial by order issued on August 30, 2001, it must have found probable cause by that date at the latest. The court finds that this logic is sound.

[4] They note that California law has changed as of 2006 to provide for indeterminate terms of civil confinement for SVP offenders and that petitioner is probably facing such a term.

because the instant federal habeas petition involves petitioner's challenge to the commitment terms covering 2001-2003, 2003-2005, and 2005-2007, no issues relating to commitment beyond 2007 are before the court in this case.

        2.      <u>State Court Habeas Challenges to 2001-2003 and 2003-2005 Terms</u>

On September 13, 2004, petitioner filed a petition for writ of habeas corpus in the Sacramento County Superior Court challenging then ongoing proceedings relating to the 2001-2003 and 2003-2005 terms. The petition was denied on November 3, 2004. In its order, the state court described petitioner's arguments as follows:

> . . . Petitioner claims that the SVP Act is unconstitutionally vague because it does not state when the trial must take place. Petitioner acknowledges that there is no requirement for when the trial must take place. First, there is no authority suggesting that the failure to set a time limitation violates due process. Petitioner's citations to federal cases are not binding or persuasive. Reference to <u>Hamdi v. Rumsfeld</u>, (2004) ___ U.S. ___, 124 S.Ct. 2633, is unpersuasive as civil commitment under the SVP Act is not comparable to federal detainment pursuant to congressional acts. Second, as applied to Petitioner, any claims of a due process violation based on the delay in having a trial is without merit. Petitioner's trial on his 2001-2003 commitment period took place in March 2003, but resulted in a mistrial. Petitioner claims that due process requires a timely trial, i.e., one that occurs before the expiration of the commitment period. (citation to petition omitted). Even if due process required such timeliness, Petitioner's trial complied since it occurred before the end of the commitment period. The mistrial was the cause of further delay, not the vagueness of the SVP statute. Since Petitioner has received all of the procedural due process required by the statute and was actually tried pursuant to the Act, he has not shown that he has been denied due process.

The Superior Court also noted that, under California law, a person subject to the SVPA has the right to a jury trial. <u>See</u> Cal. Welf. & Inst. Code § 6603(a). But, once a commitment petition is filed, there is no deadline for holding the trial. <u>See</u> <u>People v. Superior Court (Preciado)</u>, 87 Cal. App. 4th 1122, 1127 (4th Dist. 1985).

/ / /

/ / /

/ / /

6

On December 20, 2005, petitioner filed a habeas petition in the California Court of Appeal. In this petition, petitioner set forth the following factual allegations:

> Petitioner original SVP petition ended on September 10, 2001, and a new petition to recommit him was timely filed. However, that recommitment expired on September 10, 2003, without getting this petitioner to trial and another petition to commit was filed in the Sacramento Superior Court, stacking the petition to recommit (now two consecutive recommitment terms).

Petitioner contended that the "lack of diligence in bringing this petitioner to trial in a meaningful time, deprived him of his substantive and procedural due process rights." By challenging "two consecutive recommitment terms" it appears that this petition related to the 2001-2003 and 2003-2005 terms. The Court of Appeal denied habeas relief on December 22, 2005, without comment but with citation to In re Harris, 5 Cal. 4th 813, 826-29 (1993).

On June 18, 2007, petitioner filed a habeas petition in the California Supreme Court, again challenging the 2001-2003 and 2003-2005 terms. As to the 2005-2007 term, proceedings for which were still ongoing at the time petitioner filed his habeas petition in the California Supreme Court, petitioner stated:

> Allegedly, since the expiration of Petitioner's 09/09/2005 civil commitment, a "new" recommitment petition has been filed to cover the 09/10/2005 thru 09/09/2007. However, to date, Petitioner has not seen nor ever been "served" with this "new" recommitment petition nor has he been noticed concerning the associated probable cause hearing or trial. In point of fact, Petitioner has never, ever been served or noticed concerning any commitment petition, extended, new or subsequent: Only petitioner's attorney has been noticed. As of this petition, Petitioner is not only three months shy of 09/09/2007, and another expiration date. . . .

The California Supreme Court denied relief without comment or citation on August 15, 2007. Respondents concede petitioner's federal claims are exhausted.[5]

---

[5] The court finds it puzzling that respondents concede petitioner's claims relating to the 2005-2007 term are exhausted give that, by their own statement, state court proceedings on that claim were still ongoing as of at least April 2008 and, therefore, could not have been final when the answer was filed. Further, there do not appear to be any state court decisions in the current record addressing the 2005-2007 term.

## II.  STANDARDS OF REVIEW

Because this action was filed after April 26, 1996, the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") are presumptively applicable.  See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Calderon v. United States Dist. Ct. (Beeler), 128 F.3d 1283, 1287 (9th Cir. 1997), cert. denied, 522 U.S. 1099 (1998).  The AEDPA does not, however, apply in all circumstances.  When it is clear that a state court has not reached the merits of a petitioner's claim, because it was not raised in state court or because the court denied it on procedural grounds, the AEDPA deference scheme does not apply and a federal habeas court must review the claim de novo.  See Pirtle v. Morgan, 313 F.3d 1160 (9th Cir. 2002) (holding that the AEDPA did not apply where Washington Supreme Court refused to reach petitioner's claim under its "re-litigation rule"); see also Killian v. Poole, 282 F.3d 1204, 1208 (9th Cir. 2002) (holding that, where state court denied petitioner an evidentiary hearing on perjury claim, AEDPA did not apply because evidence of the perjury was adduced only at the evidentiary hearing in federal court); Appel v. Horn, 250 F.3d 203, 210 (3d Cir.2001) (reviewing petition de novo where state court had issued a ruling on the merits of a related claim, but not the claim alleged by petitioner).  When the state court does not reach the merits of a claim, "concerns about comity and federalism . . . do not exist."  Pirtle, 313 F. 3d at 1167.

Where AEDPA is applicable, federal habeas relief under 28 U.S.C. § 2254(d) is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); see also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v. Taylor, 529 U.S. 362 (2000); Lockhart v. Terhune, 250 F. 3d 1223, 1229 (9th Cir. 2001).  Thus,

under § 2254(d), federal habeas relief is available where the state court's decision is "contrary to" or represents an "unreasonable application of" clearly established law. Under both standards, "clearly established law" means those holdings of the United States Supreme Court as of the time of the relevant state court decision. See Carey v. Musladin, 127 S.Ct. 649, 653-54 (2006). "What matters are the holdings of the Supreme Court, not the holdings of lower federal courts." Plumlee v. Masto, 512 F.3d 1204 (9th Cir. Jan. 17, 2008) (en banc). Supreme Court precedent is not clearly established law, and therefore federal habeas relief is unavailable, unless it "squarely addresses" an issue. See Moses v. Payne, ___ F.3d ___ (9th Cir. Sept. 15, 2008) (citing Wright v. Van Patten, 128 S.Ct. 743, 746 (2008)). For federal law to be clearly established, the Supreme Court must provide a "categorical answer" to the question before the state court. See id.; see also Carey, 127 S.Ct at 654 (holding that a state court's decision that a defendant was not prejudiced by spectators' conduct at trial was not contrary to, or an unreasonable application of, the Supreme Court's test for determining prejudice created by state conduct at trial because the Court had never applied the test to spectators' conduct). Circuit court precedent may not be used to fill open questions in the Supreme Court's holdings. See Carey, 127 S.Ct. at 653.

In Williams v. Taylor, 529 U.S. 362 (2000) (O'Connor, J., concurring, garnering a majority of the Court), the United States Supreme Court explained these different standards. A state court decision is "contrary to" Supreme Court precedent if it is opposite to that reached by the Supreme Court on the same question of law, or if the state court decides the case differently than the Supreme Court has on a set of materially indistinguishable facts. See id. at 405. A state court decision is also "contrary to" established law if it applies a rule which contradicts the governing law set forth in Supreme Court cases. See id. In sum, the petitioner must demonstrate that Supreme Court precedent requires a contrary outcome because the state court applied the wrong legal rules. Thus, a state court decision applying the correct legal rule from Supreme Court cases to the facts of a particular case is not reviewed under the "contrary to" standard. See id. at 406. If a state court decision is "contrary to" clearly established law, it is reviewed to

determine first whether it resulted in constitutional error.  See Benn v. Lambert, 293 F.3d 1040, 1052 n.6 (9th Cir. 2002).  If so, the next question is whether such error was structural, in which case federal habeas relief is warranted.  See id.  If the error was not structural, the final question is whether the error had a substantial and injurious effect on the verdict, or was harmless.  See id.

State court decisions are reviewed under the far more deferential "unreasonable application of" standard where it identifies the correct legal rule from Supreme Court cases, but unreasonably applies the rule to the facts of a particular case.  See id.; see also Wiggins v. Smith, 123 S.Ct. 252 (2003).  While declining to rule on the issue, the Supreme Court in Williams, suggested that federal habeas relief may be available under this standard where the state court either unreasonably extends a legal principle to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply.  See Williams, 529 U.S. at 408-09.  The Supreme Court has, however, made it clear that a state court decision is not an "unreasonable application of" controlling law simply because it is an erroneous or incorrect application of federal law.  See id. at 410; see also Lockyer v. Andrade, 123 S.Ct. 1166, 1175 (2003).  An "unreasonable application of" controlling law cannot necessarily be found even where the federal habeas court concludes that the state court decision is clearly erroneous.  See Lockyer, 123 S.Ct. at 1175.  This is because ". . . the gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."  Id.  As with state court decisions which are "contrary to" established federal law, where a state court decision is an "unreasonable application of" controlling law, federal habeas relief is nonetheless unavailable if the error was non-structural and harmless.  See Benn, 283 F.3d at 1052 n.6.

The "unreasonable application of" standard also applies where the state court denies a claim without providing any reasoning whatsoever.  See Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Delgado v. Lewis, 233 F.3d 976, 982 (9th Cir. 2000).  Such decisions are considered adjudications on the merits and are, therefore, entitled to deference under the

AEDPA. See Green v. Lambert, 288 F.3d 1081 1089 (9th Cir. 2002); Delgado, 233 F.3d at 982. The federal habeas court assumes that state court applied the correct law and analyzes whether the state court's summary denial was based on an objectively unreasonable application of that law. See Himes, 336 F.3d at 853; Delgado, 233 F.3d at 982.

### III. DISCUSSION

Petitioner asserts three grounds related to the 2001-2003, 2003-2005, and 2005-2007 commitment terms as follows:

1. Petitioner was deprived of his substantive due process rights by not being brought to trial in a meaningful and timely manner. . . .;

2. Petitioner was deprived of his equal protection rights . . . in not having a delineated time frame in which trial must take place; and

3. Substantive and procedural due process violations, vagueness of the SVP Act in that it does not delineate a time in which trial must start. . . .

Respondents argue generally:

> Petitioner's claims fail on procedural grounds and on the merits. Petitioner's claims relating to the recommitment proceedings for his 2001 to 2005 terms and the SVPA's constitutionality are procedurally barred because the California Court of Appeal denied his claims as he did not raise them on appeal. The state court's denial of Petitioner's claims relating to the more recent commitment period from 2005 to 2007, was not objectively unreasonable. Petitioner's claims fail on the merits because there is no federal authority establishing a constitutional right to a speedy trial for civil commitments. Even if such a right existed, Petitioner has received all the process he is due under federal constitutional standards.

They also argue that the SVP is not unconstitutionally vague.

The court first addresses petitioner's contention that the SVP statute is vague because it does not require a trial be brought within a certain time period. This argument is conceptually flawed. For a statute to be vague in the constitutional sense means that it is unclear: (1) who falls within its scope; (2) what conduct is forbidden; and/or (3) what punishment may be imposed. See Connally v. General Construction Co., 269 U.S. 385, 391 (1926). In the case of

11

the SVP, none of these points is unclear.  Further, as to the time for a commitment trial, it is clear that state law imposes no deadline for holding the trial.  See Preciado, 87 Cal. App. at 1127. Therefore, the court concludes that the SVP statute is not unconstitutionally vague due to the lack of a timeframe for holding a trial.

Petitioner also asserts that his equal protection rights were violated by the lack of a speedy trial requirement.  Equal protection claims arise when a charge is made that similarly situated individuals are treated differently without a rational relationship to a legitimate state purpose.  See San Antonio School District v. Rodriguez, 411 U.S. 1 (1972).  Because the SVP's lack of any timeframe for a trial on a commitment application applies to everyone subject to the statute, it cannot be said that petitioner is treated differently than anyone who is similarly situated (i.e., subject to the SVP).

The gravamen of petitioner's claims is that his due process rights were violated because trials on the various commitment petitions were not held in a timely manner.  The Ninth Circuit has observed that, under clearly established Supreme Court precedent, in order to satisfy federal due process requirements "'. . . state civil commitment schemes must at minimum follow proper procedures and evidentiary standards' and require proof of dangerousness plus proof of an additional factor, such as mental disorder." Hubbart v. Knapp, 379 F.3d 773, 781 (9th Cir. 2004) (quoting Kansas v. Hendricks, 521 U.S. 346, 357-58 (1997)).  The required procedural procedures are:  (1) written notice; (2) a hearing at which evidence is disclosed; (3) an opportunity to be heard; (4) an independent decision-maker; (5) reasoned findings; (6) access to counsel; and (7) effective and timely notice of these rights.  See Carty v. Nelson, 426 F.3d 1064, 1074 (9th Cir. 2005) (citing Vitek v. Jones, 445 U.S. 480, 494-97 (1980)).

Petitioner does not allege that he was denied any of these procedural protections. As respondents point out, there is no clearly established Supreme Court precedent requiring that a trial occur within any set time period.  Petitioner asks the court to take judicial notice of People v. Litmon, 162 Cal.App.4th 383 (6th Dist. 2008), in which the California Court of Appeal

addressed a due process claim based on excessive pre-trial delay in SVP commitment proceedings. The case supports the conclusion that there is no clearly established Supreme Court precedent on the issue. The court observed:

> It is not entirely clear what analytical framework . . . will ultimately be applied by the United States Supreme Court in evaluating a procedural due process claim of excessive pre-trial delay in the context of involuntary civil commitments. . . .

Id. at 399.

The court in Litmon held that "the norm to comport with the demands of procedural due process in the context of involuntary SVP commitment must be a trial in advance of the potential commitment term since, under California law, the individual alleged to be an SVP is confined pending final determination of an SVP petition." Id. at 401. This holding, however, is not based on clearly established Supreme Court precedent, as the Court of Appeal noted, and does not itself represent clearly established law under AEDPA. Further, even if the Court of Appeal's decision in Litmon does represent clearly established law for federal habeas purposes, it was decided well after the state court decisions in this case. Therefore, Litmon cannot represent the law as it existed at the time the state court addressed petitioner's claims.

  Clearly, had Litmon been decided before petitioner filed his claims in state court, he likely would have been granted some kind of relief at the state level. It is also clear that Litmon will likely have an impact on any future claims petitioner may raise in state court concerning subsequent commitment orders. However, this court's habeas jurisdiction is limited by AEDPA. No matter how much the court may agree with the holding in Litmon, federal habeas relief is unavailable because the court cannot conclude that the state court's denial of petitioner's due process claim was either contrary to or an unreasonable application of clearly established law, as announced by the United States Supreme Court, and as it existed at the time the state court rendered its decisions.

///

### IV.  CONCLUSION

Based on the foregoing, the undersigned recommends that:

1. Petitioner's petition for a writ of habeas corpus (Doc. 1) be denied; and

2. The Clerk of the Court be directed to enter judgment and close this file.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 20 days after being served with these findings and recommendations, any party may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: October 6, 2008

_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE